## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### 2013-1574

**ZHEJIANG NATIVE PRODUCE & ANIMAL BY-PRODUCTS IMPORT & EXPORT CORP., KUNSHAN FOREIGN TRADE CO., CHINA (TUSHU) SUPER FOOD IMPORT & EXPORT CORP., HIGH HOPE INTERNATIONAL GROUP JIANGSU FOODSTUFFS IMPORT & EXPORT CORP., NATIONAL HONEY PACKERS & DEALERS ASSOCIATION, ALFRED L. WOLFF, INC., C.M., GOETTSCHE & CO., CHINA PRODUCTS NORTH AMERICA, INC., D.F. INTERNATIONAL (USA), INC., EVERGREEN COYLE GROUP, INC., EVERGREEN PRODUCE, INC., PURE SWEET HONEY FARM INC., and SUNLAND INTERNATIONAL, INC.,**

*Plaintiffs-Appellants,*

v.

**UNITED STATES,**

*Defendant-Appellee,*

and

**SIOUX HONEY ASSOCIATION and AMERICAN HONEY PRODUCERS ASSOCIATION,**

*Defendants-Appellees.*

Appeal from the United States Court of International Trade in case no. 02-CV-0057, Judge Richard K. Eaton.

### BRIEF OF DEFENDANTS-APPELLEES SIOUX HONEY ASSOCIATION AND AMERICAN HONEY PRODUCERS ASSOCIATION

MICHAEL J. COURSEY
R. ALAN LUBERDA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400

Counsel for Defendants-Appellees Sioux Honey
Association and American Honey Producers
Association

March 18, 2014

**Form 9.**     **Certificate of Interest**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_Zhejiang Native Produce_     v.     _United States_

No.   2013-1574

Certificate of Interest

Counsel for Defendants-Appellees, R. Alan Luberda, certifies the following:

1.     The full name of every party or amicus represented by me is:

American Honey Producers Association and Sioux Honey Association

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Not applicable

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Kelley Drye & Warren LLP
Michael J. Coursey
R. Alan Luberda
Benjamin Blase Caryl
mcoursey@kelleydrye.com
aluberda@kelleydrye.com
bcaryl@kelleydrye.com

March 18, 2014
Date

Signature of counsel

R. Alan Luberda
Printed name of counsel

# Table of Contents

**Page(s)**

STATEMENT OF RELATED CASES ..................................................................... 1

JURISDICTION ....................................................................................................... 3

STATEMENT OF ISSUES ...................................................................................... 4

STATEMENT OF THE CASE ................................................................................. 5

STATEMENT OF FACTS ....................................................................................... 8

SUMMARY OF ARGUMENT .............................................................................. 17

ARGUMENT .......................................................................................................... 20

I.      STANDARD OF REVIEW ......................................................................... 20

II.     PLAINTIFFS-APPELLANTS ARE BARRED BY THE MANDATE
        RULE FROM FURTHER LITIGATING COMMERCE'S LESS-
        THAN-FAIR VALUE DETERMINATION ................................................. 21

        A.      The Mandate Rule Bars Relitigation of Plaintiffs-Appellants'
                Waived Claims ................................................................................. 21

        B.      Plaintiffs-Appellants Have Failed to Argue Any Exception to
                the Mandate Rule ............................................................................ 27

III.    THE CIT PROPERLY INTERPRETED AND APPLIED THE
        MANDATE OF THIS COURT'S DECISION IN *ZHEJIANG III* .............. 31

        A.      This Court's Mandate in *Zhejiang III* Does Not Support  Relief
                As to Any Issue Related to Commerce's Less-Than-Fair-Value
                Determination ................................................................................. 31

        B.      Commerce's Less-than-Fair-Value Determination Was Not "By
                Necessary Implication" Included In the Mandate of *Zhejiang III* ..... 38

                1.      The Construction of a Statute As It Applies to One Issue
                        Does Not By Itself Create Law of the Case to Other
                        Issues ................................................................................... 38

Table of Contents
(continued)

Page

    2.    The Court Did Not Rule by Necessary Implication That the Suspension Agreement Compelled Commerce to Reach a Negative Less-than-Fair-Value Determination ......... 39

    3.    The Court's Interpretation of Section 1673b(c) Is Not Part of the Holding of *Zhejiang III*.......................................... 42

C.    The "Law of the Case Doctrine" and the Mandate Rule Are Different Aspects of the Same Policy and Must be Applied Consistently ...................................................................... 43

D.    The CIT Did Not Fail to Implement the Mandate of *Zhejiang III* .... 45

CONCLUSION AND RELIEF SOUGHT............................................................. 47

Table of Authorities

## CASES

Amado v. Microsoft Corp.,
    517 F.3d 1353 (Fed. Cir. 2008)............................................................................ 32

Christianson v. Colt Indus. Operating Corp.,
    486 U.S. 800 (1988) ............................................................................... 39, 44

Clark v. United States,
    656 F.3d 1317 (Fed. Cir. 2011)............................................................................ 45

Doe v. United States,
    463 F.3d 1314 (Fed. Cir. 2006).................................................................... 26, 30

Donahoe v. Consolidated Operating & Prod. Corp.,
    30 F.3d 907 (7th Cir., 1994)................................................................................ 47

Engel Indus. v. Lockformer Co.,
    166 F.3d 1379 (Fed. Cir. 1999)................................................................... passim

Kontrick v. Ryan,
    540 U.S. 443 (2004) ........................................................................................... 24

Laitram Corp. v. NEC Corp.,
    115 F.3d 947 (Fed. Cir. 1997)......................................................... 20, 32, 33, 37

Novosteel SA v. United States,
    284 F.3d 1261 (Fed. Cir. 2002)......................................................................26-28

Tronzo v. Biomet, Inc.,
    236 F.3d 1342 (Fed. Cir. 2001)....................................................25-26, 28, 30, 45

United States v. Muckleshoot Indian Tribe,
    235 F.3d 429 (9th Cir. 2000)............................................................................... 43

Wood v. Milyard,
    132 S.Ct. 1826 (2012) ....................................................................................... 24

Table of Authorities

Page(s)

Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp.
   v. United States,
   Slip Op. 03-153 (Nov. 21, 2003) (reported at 27 CIT 1827,
   2003 Ct. Intl. Trade LEXIS 172) ("Zhejiang I")..........................................passim

Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp.
   v. United States,
   Slip Op. 04-109 (Aug. 26, 2004)
   (reported at 28 CIT 1427,
   2004 Ct. Intl. Trade LEXIS 108) ("Zhejiang II") ........................................... 6, 10

Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp.
   v. United States,
   432 F.3d 1363 (Fed. Cir. 2005) ("Zhejiang III"),
   rehearing denied, 2006 U.S. App. LEXIS 4544
   (Fed. Cir. Feb. 14, 2006) ...............................................................................passim

Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp.
   v. United States,
   Slip Op. 06-85 (June 6, 2006) ("Zhejiang IV") ............................................ 15, 38

Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp. v.
   United States, Order denying Plaintiffs' Motion for Relief from Judgment
   pursuant to USCIT Rule 60(b) (Sept. 26, 2007) .......................................... 16, 47

Zhejiang Native Produce & Animal By-Products Imp. and Exp. Corp.
   v. United States,
   339 Fed. App. 992,
   2009 U.S. App. LEXIS 16179 (Fed. Cir. July 23, 2009)......................1-2, 16, 36

Zhejiang Native Produce & Animal By-Products Imp. and Exp. Corp.
   v. United States,
   Slip Op. 13-76 (June 18, 2013)
   (reported at 2013 Ct. Intl. Trade LEXIS 75) ("Zhejiang V") ....................... 16-18

### STATUTES AND REGULATIONS

19 U.S.C. § 1673c(b)..........................................................................................passim

19 U.S.C. § 1673d(a)(3)(A)-(B) ............................................................................... 12

Table of Authorities

Page(s)

19 U.S.C. § 1677a(a) ............................................................................... 41-42

19 U.S.C. § 1677b(c) ............................................................................... 41-42

19 C.F.R. § 351.206(h) ................................................................................. 12

## ADMINISTRATIVE DETERMINATIONS

Final Determination of Sales at Less Than Fair Value:
    Certain Hot-Rolled Carbon Steel Flat Products
    from the People's Republic of China,
    66 Fed. Reg. 49,632 (Dep't Commerce Sept. 28, 2001) ............................... 22-23

Final Results of Five-Year ("Sunset") Review, Termination of Suspended
    Antidumping Investigation on Honey From the People's Republic of
    China, 65 Fed. Reg. 46,426 (Dep't Commerce July 28, 2000) ........................... 9

Notice of Amended Final Determination of Sales at Less Than Fair Value
    and Antidumping Duty Order;
    Honey from the People's Republic of China,
    66 Fed. Reg. 63,670 (Dep't Commerce Dec. 10, 2001) ...................................... 8

## MISCELLANEOUS

12 James W. Moore et al., Moore's Federal Practice at 60.48 (Supp. 2007) ......... 29

## BRIEF OF DEFENDANTS-APPELLEES

Defendants-Appellees the American Honey Producers Association and Sioux Honey Association ("domestic industry"), submit this brief in reply to the Brief of Plaintiffs-Appellants Zhejiang Native Produce and Animal By-Products Import & Export Corp. et al. ("Plaintiffs-Appellants" or "Zhejiang").

## STATEMENT OF RELATED CASES

**1.** **Appeal in or from the same civil action previously before this Court.**

1. First Appeal

Title and Number: Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States, Appeal No. 05-1058.

Date of Decision: December 20, 2005; rehearing denied Feb. 14, 2006

Composition of Panel: Judges Newman, Archer and Rader

Citation of Opinion in Federal Reporter: 432 F.3d 1363 (Fed. Cir. Dec. 20, 2005) (JA.332-41), rehearing denied, 2006 U.S. App. LEXIS 4544 (Fed. Cir. Feb. 14, 2006) (JA.359).

2. Second Appeal

Title and number: Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v United States, Appeal No. 08-1106.

Date of decision: July 23, 2009

Composition of the Panel:    Judges Newman, Bryson and Linn

Citation of Opinion in Federal Reporter:    339 Fed. Appx. 992, 2009 U.S. App. LEXIS 16179 (Unpublished in Federal Reporter) (JA.420-23)

**2. Pending Cases that will directly affect or will be directly affected by this Court's decision in the pending appeal.**

The stated purpose of Plaintiffs-Appellants' appeal is to obtain a remand order with instructions to compel the United States Department of Commerce ("Commerce") comply with this Court's previous opinion in <u>Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States</u>, 432 F.3d 1363 (Fed. Cir. 2005) (JA.332-41) ("<u>Zhejiang III</u>"), <u>rehearing denied</u>, 2006 U.S. App. LEXIS 4544 (Fed. Cir. Feb. 14, 2006) (JA.359). Commerce, however, has already complied with this Court's mandate in <u>Zhejiang III</u>. Plaintiffs-Appellants instead seek to have this court rule on a question not addressed in <u>Zhejiang III</u>, namely, whether subject merchandise sold at prices in compliance with a minimum price requirements of a Suspension Agreement under 19 U.S.C. § 1673c(b) that expired before initiation of the investigation in question are precluded as a matter of law from being found by Commerce to have been dumped. <u>See</u> Zhejiang Direct Brief at 14. The effect of such a ruling, if applied on remand by the Court of International Trade, would be to direct the agency to issue a negative antidumping

determination resulting in the antidumping duty order on honey imports from China being revoked *ab initio.*

Since the order was published, there have been twelve annual administrative review periods, 18 "new shipper" administrative reviews, and two five-year sunset reviews – each of which has resulted in a finding of dumping by Chinese respondents pursuant to the statutory provisions that control the calculation of dumping margins. Those administrative proceedings have engendered the following ongoing cases in the U.S. Court of International Trade ("CIT") that would be affected, and potentially would be mooted, by this case if appellants prevail.

- Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States , CIT Court No. 02-00057, Slip Op. 03-153 (Nov. 21, 2003) (reported at 27 CIT 1827, 2003 Ct. Intl. Trade LEXIS 172) (JA.179-224);

- Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp., et al. v. United States, CIT Court No. 02-00064 (stayed by January 30, 2008 Order of Court (ECF No. 27), pending outcome of this (CIT Court No. 02-00057) appeal); and

- Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States, CIT Court No. 04-00268 (stayed by September 7, 2006 Order of Court (ECF No. 49) pending outcome of this (CIT Court No. 02-00057) appeal).

## JURISDICTION

The domestic industry does not challenge the jurisdictional claim made by Plaintiffs-Appellants. The record demonstrates, however, that Plaintiffs-

Appellants seek to further litigate a claim that they previously waived.  As a result, this Court should invoke the mandate rule and dismiss the instant appeal.

## STATEMENT OF ISSUES

The domestic industry disagrees with the statement of issues set forth by Plaintiffs-Appellants and believes the following more accurately states the issues before the Court.

**1.     Whether Plaintiffs-Appellants should be barred from the relief they seek by the mandate rule as a result of their waiver of all claims related to Commerce's affirmative less-than-fair-value determination based on their deliberate decision not to timely appeal the Court of International Trade's final decision on that issue in Zhejiang I.**

Yes.  Under this Court's well-established application of the mandate rule, Plaintiffs-Appellants deliberately waived further litigation on issues related to Commerce's affirmative less-than fair value determination when they elected not to appeal those issues after the Court of International Trade issued its opinion in Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States , Slip Op. 03-153 (Nov. 21, 2003) (reported at 27 CIT 1827, 2003 Ct. Intl. Trade LEXIS 172) (JA.179-224) ("Zhejiang I").   Once those issues were intentionally abandoned by Plaintiffs-Appellants, they became part of the mandate of the Court in Zhejiang III and were foreclosed from further litigation.

4

**2.     Whether the trial court properly applied the mandate of this Court in <u>Zhejiang III</u> by ordering Commerce on remand to address only the "imputation of knowledge" of dumping element of its critical circumstances finding?**

Yes.  The CIT properly applied the mandate of this Court in <u>Zhejiang III</u> when it instructed Commerce to reach a critical circumstances determination that did not rely on imputing knowledge of dumping on sales that were subject to a suspension agreement that contained price and volume limitations.  That was the only issue appealed by Plaintiffs-Appellants and the only issue addressed by the Court in <u>Zhejiang III</u>.  The scope of the mandate is necessarily limited by the scope of the appeal taken and the issues addressed by the Court.

<u>**STATEMENT OF THE CASE**</u>

Plaintiffs-Appellants state that they are appealing "U.S. Court of International Trade's final decision in <u>Zhejiang Native Produce & Animal By-Products Import & Export Corp., et al. v United States</u>, USCIT Court No. 02-00057."  Zhejiang Direct Brief at 3-4.  In that case, the CIT issued final decisions regarding the disposition of the Plaintiffs-Appellants' claims regarding:

(1) Commerce's alleged failure to consider the exporters' compliance with the price and quantity guidelines of a Suspension Agreement in making its affirmative dumping determination.  <u>See</u> Plaintiffs' Amended Complaint at ¶ 10-11 (Mar. 20, 2002) in <u>Zhejiang Native Produce and Animal By-Products Imp. & Exp.</u>

Corp. v. United States, CIT Court No. 02-0057 (ECF No. 8) (JA.130-41) ("Amended Complaint") ("Count 1") (JA.135).

(2) Commerce's alleged failure to consider the exporters' compliance with the Suspension Agreement's price and quantity guidelines in making its affirmative critical circumstances finding. See id. at ¶ 12-14 ("Count 2") (JA.135).

(3) The choice of a "surrogate value" for the raw honey factor-of-production. See id. at ¶¶ 24-26 ("Count 6") (JA.137).

The CIT initially ruled against Plaintiffs-Appellants on each of these three counts. See Zhejiang I, Slip Op. 03-153 (Nov. 21, 2003) (reported at 27 CIT 1827, 2003 Ct. Intl. Trade LEXIS 172) (JA.179-224); and Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States, Slip Op. 04-109 (Aug. 26, 2004) (reported at 28 CIT 1427, 2004 Ct. Intl. Trade LEXIS 108) (JA.252-69) ("Zhejiang II"). Plaintiffs-Appellants, presented with final decisions ripe for appeal on each of these three issues, knowingly waived any right to further litigate the dumping margin calculation issues (Counts 1 and 6), by appealing to this Court only Commerce's critical circumstances determination (Count 2) in the appeal to this Court that led to the Court's opinion in Zhejiang III. They intentionally did not appeal the less-than-fair-value determination, despite having raised before the CIT the applicability of the Suspension Agreement to that determination as well as to the critical circumstances determination.

6

Plaintiffs-Appellants now claim that under the law of the case doctrine, this Court's statement in <u>Zhejiang III</u> that the CIT "erred in holding that the Suspension Agreement was not designed to eliminate dumping" with regard to its substantial evidence review of the critical circumstances issue, required Commerce to apply the same legal analysis to the less-than-fair-value determination that had been finally determined by the CIT in <u>Zhejiang I</u> and not appealed by the Plaintiffs-Appellants. <u>See</u> <u>Zhejiang III</u>, 432 F.3d at 1367 (JA.340). As a result, Plaintiffs-Appellants seek to have this Court:

(1) declare as the "law of the case" that "prices in compliance with the Suspension Agreement were required to be at a level that would eliminate sales at less than fair value" not only with regard to the critical circumstances issue appealed but also with regard to the less-than-fair-value determination they chose not to appeal, despite Commerce's correct application of the statutory antidumping methodology related to investigations; and

(2) remand the case to the CIT with instructions to order Commerce find that the sales examined in the final less-than-fair-value determination were not in fact dumped.

7

## STATEMENT OF FACTS

While the domestic industry does not disagree with the basic chronology presented in Plaintiffs-Appellants' Statement of the Facts, they have omitted important additional facts.

### 1.    Plaintiffs-Appellants' Initial Appeal of Commerce's Final Affirmative Dumping Determination

This is the latest chapter in an appeal of an antidumping duty order issued on December 10, 2001 against honey imports from the People's Republic of China. See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order; Honey from the People's Republic of China, 66 Fed. Reg. 63,670 (Dep't Commerce Dec. 10, 2001) (JA.125-29). The investigation that led to this order was initiated after the expiration in August 2000 of a Suspension Agreement from a suspended 1995 antidumping duty investigation of honey from China that was implemented to "prevent the suppression or undercutting of price levels of" honey in the United States. See Zhejiang III, 432 F.3d at 1365 (JA.335) (citing Honey from the People's Republic of China; Suspension of Investigation, 60 Fed. Reg. 42,521, 42,522 (Dep't Commerce Aug. 16, 1995) (JA. 51-59)). The Suspension Agreement was allowed to expire because the domestic industry no longer found it effective in preventing injurious dumping. See Antidumping and Countervailing Duty Petition, Honey from Argentina and the People's Republic of China, at 130-133 (Sept. 29, 2000) (JA.500, 649-52). While the period of

investigation for the antidumping case overlapped with the period of the Suspension Agreement, the Suspension Agreement itself terminated as of August 2000, prior to initiation of the investigation underlying this appeal. Final Results of Five-Year ("Sunset") Review, Termination of Suspended Antidumping Investigation on Honey From the People's Republic of China, 65 Fed. Reg. 46,426 (July 28, 2000) (JA. 60–61).

Commerce's final affirmative dumping determination was appealed by Plaintiffs-Appellants with a complaint consisting of 10 separate counts. Amended Complaint at ¶¶ 10-49 (JA.135-140). Nevertheless, appellants elected to pursue and brief only three of these 10 counts in their Rule 56(b) motion for judgment on the agency record. See September 17, 2002 Brief in Support of Plaintiffs' Rule 56.2 Motion For Judgment on the Agency Record ("Pls.' 56.2 Memorandum in Support") at i–ii (listing arguments raised) (JA.143-44).

First, Plaintiffs-Appellants claimed that Commerce's failure to consider properly the exporters' compliance with the price and quantity guidelines of a Suspension Agreement rendered *its dumping determinations* for the exporters unsupported by substantial record evidence and contrary to law. See Amended Complaint at ¶ 10-11 ("Count 1") (JA.135). Second, appellants separately claimed that Commerce's failure to consider the exporters' compliance with the Suspension Agreement's price and quantity guidelines in making *its critical circumstances*

9

*determination* was unsupported by substantial record evidence and was contrary to law. See Amended Complaint at ¶ 12-14 ("Count 2") (JA.135). Third, Plaintiffs-Appellants challenged the Indian price Commerce selected as a "surrogate value" for the raw honey factor-of-production. See Amended Complaint at ¶¶ 24-26 ("Count 6") (JA.137).

The CIT eventually ruled against appellants on each of these three counts. See Zhejiang I, Slip Op. 03-153 (Nov. 21, 2003) (reported at 27 CIT 1827, 2003 Ct. Intl. Trade LEXIS 172) (JA.179-224); and Zhejiang II, Slip Op. 04-109 (reported at 28 CIT 1427, 2004 Ct. Intl. Trade LEXIS 108) (JA.252-69). The disposition of two of those counts, Count 1 (less than fair value determination) and Count 2 (critical circumstances determination) are relevant to this appeal.

- **Count 1: The Suspension Agreement's Impact on Commerce's Dumping Determinations.**

Plaintiffs-Appellants now seek to further litigate before this Court the CIT's rejection in Zhejiang I of claims related to Count 1 of their Amended Complaint. See Amended Complaint at ¶ 10-11 (JA.135). The CIT examined Plaintiffs-Appellants' claim that Commerce's calculation of affirmative dumping margins for the exporters was unreasonable because (1) the Suspension Agreement was intended to "'eliminate completely' any dumping of the subject merchandise" by the Chinese exporters (Zhejiang I, Slip Op. 03-153 at 15 (JA.193)); and (2) the exporters had fully complied with the Suspension Agreement during the

investigation's POI (id. at 14 (JA.192)). The CIT rejected these claims, holding

that the statutorily prescribed method for determining the existence of dumping in

an investigation does not require or even permit basing its determination on the

Suspension Agreement. The CIT specifically found,

> nothing in the statutes or regulations that guide
> Commerce's antidumping determination in the NME
> context requires (*or for that matter permits*) Commerce
> to consider the terms of a suspension agreement. See 19
> U.S.C. §§ 1677b(c) [statutory criteria for normal value in
> the NME context], 1677a(a) [statutory criteria for export
> price]; 19 C.F.R. § 351.408(a) [Commerce regulations'
> criteria for normal value in the NME context].

Id. at 19 (JA.197) (emphasis added)(brackets in original). The CIT also found that

in making its dumping determination, Commerce had closely followed the

statutory criteria for establishing the two essential components of a dumping

calculation – U.S. price and normal value – for an investigation involving imports

from a non-market economy ("NME") country such as China. Zhejiang I, Slip Op.

03-153 at 8-13, 18-19, 23 (JA.186-91, 196-97, 201). The CIT then also fully

explained its disagreement with Plaintiffs-Appellants' claim that the Suspension

Agreement was intended to completely eliminate dumping. Id. at 19-23 (JA.197-

201).

- **Count 2: The Suspension Agreement's Impact on Commerce's Critical Circumstances Determination.**

In Count 2 of the Amended Complaint, Plaintiffs below claimed that Commerce's failure to consider the exporters' compliance with the Suspension Agreement's price and quantity guidelines in making its critical circumstances findings was unsupported by substantial evidence and contrary to law. Amended Complaint at ¶ 12-14 (JA.135). In their Rule 56.2 brief, Plaintiffs below challenged two elements of Commerce's affirmative final critical circumstances determination: (1) that the importers of Chinese honey subject to the Suspension Agreement knew or should have known that these imports were dumped; and (2) that the importers knew or should have known that the imports were materially injuring the domestic industry.

With regard to the importer's knowledge of dumping, Plaintiffs-Appellants argued that Commerce's use of its standard practice of imputing such knowledge to the U.S. importers of merchandise found to be dumped at *ad valorem* rates of 25 percent or more ("Commerce's 25 Percent Test") was "'arbitrary and unreasonable,'" given the existence of the Suspension Agreement during the investigation's POI. Zhejiang I, Slip Op. 03-153 at 28-29 (JA.206-207) (quoting Pls.' 56.2 Memorandum in Support at 21-22 (JA.168-69)). With regard to the knowledge of dumping test, Plaintiffs below argued that "'the only *knowledge* importers had at the time of importation was that they were purchasing Chinese

12

honey at prices that had been *officially sanctioned* by the Department of Commerce.'" Zhejiang I, Slip Op. 03-153 at 30 (JA.208) (quoting Pls.' 56.2 Memorandum in Support at 22 (JA.169) (emphasis in appellants' brief)). The CIT rejected these arguments, and ruled that the Suspension Agreement provided no reason for Commerce not to follow its standard knowledge-of-dumping methodology (i.e., the 25 Percent Test) in this case. Zhejiang I, at 32-34 (JA.210-12). The CIT also upheld Commerce's knowledge of injury test. Id. at 39-44 (JA.217-22).

### 2. Appellants' Election to Appeal Only the CIT's Dismissal of Count 2, and this Court's Reversal of the CIT on that Count

The Statement of Facts in Plaintiffs-Appellants' brief in the instant appeal states, "On October 25, 2004, Zhejiang filed a timely appeal against the CIT's decision sustaining Commerce's LTFV and critical circumstances determinations." Zhejiang Direct Brief at 10. Insofar as this statement implies that Zhejiang challenged Commerce's less-than-fair-value determination in Ct. No. 05-1058, that is incorrect. Plaintiffs-Appellants appealed a single issue, whether the Department could impute knowledge of dumping using its standard 25 percent margin test based on margins calculated from sales that had been made within the terms of the Suspension Agreement. See Plaintiffs-Appellants' Direct Brief in Ct. No. 05-1058 at 23, 35 and 48 (JA.300, 312 and 325). Plaintiffs-Appellants did not appeal any

13

element of the CIT's dismissal of Count 1 (relationship of the Suspension Agreement to the dumping calculation) or Count 6 of the Amended Complaint (choice of surrogate value for raw honey). Id. In this regard, Plaintiffs-Appellants' decision to pursue only the knowledge of dumping element of the critical circumstances issue, even though the CIT had also ruled against their challenge of Commerce's less-than-fair value determination, was similar to an earlier strategic litigation decision to pursue only three of the 10 counts of their Amended Complaint before the CIT.

In reversing the CIT's decision that Commerce's knowledge of dumping element of the critical circumstances finding was supported by substantial evidence, this Court explained that the Suspension Agreement (1) was intended prevent the suppression or undercutting of price levels in the United States; (2) set minimum U.S. prices for Chinese honey; and (3) was still in effect during the period in which the investigated sales entered the United States. Zhejiang III, 432 F.3d at 1367-68 (JA.338-41). In so doing, the Court also ruled that "prices in compliance with the Suspension Agreement were required to be at a level that would eliminate sales at less than fair value." Zhejiang III, 432 F.3d at 1366-67 (JA.338-39). The Court held:

> Zhejiang argues that the "knew or should have known" requirement for critical circumstances was not met, and that substantial evidence does not support the contrary

finding based on imputation. We agree. As Zhejiang
states, "it strains credibility to suggest that Commerce
could establish minimum prices for honey designed to
'prevent the suppression or undercutting of price levels
of the United States honey products' and then determine
that U.S. importers purchasing honey in accordance with
these pricing guidelines should have known these sales
would be found to be at less than fair value." When all
factors are considered, there is not substantial evidence to
support the finding of critical circumstances.

Zhejiang III, 432 F.3d at 1368 (JA.341). The Court remanded the case to the CIT

"for appropriate further proceedings." Id. at 1364 (JA.335).

Consistent with this Court's instruction in Zhejiang III, on June 6, 2006, the

CIT remanded the determination to Commerce "for further consideration *of its*

*critical circumstances findings*." Zhejiang Native Produce and Animal By-

Products Imp. & Exp. Corp. v. United States, Slip Op. 06-85 (June 6, 2006)

(reported at 30 CIT 725) (JA.360-63) ("Zhejiang IV") (emphasis added).

### 3. Plaintiffs-Appellants' Rule 60(b) Motion

The Court issued its mandate for Zhejiang III on February 21, 2006.

(JA.332). More than eight months later, Plaintiffs-Appellants requested under

Rule 60(b)(6) that the CIT reconsider its earlier rejection of their argument that the

Suspension Agreement precluded Commerce from finding that the Chinese

exporters were dumping during the POI on the basis that this Court's opinion in

Zhejiang III required the CIT to do so. See Plaintiffs' Oct. 27, 2006 Rule 60(b)

Motion for Relief from Judgment ("Plaintiffs' Rule 60(b) Motion") (JA.376-78),

and Memorandum of Law in Support Thereof ("Plaintiffs' Rule 60(b) Memorandum") (JA.379-402). This was the first time that Plaintiffs-Appellants argued that Judge Eaton's remand instructions to Commerce failed to implement the mandate of the Court in <u>Zhejiang III</u>. The CIT denied that motion. <u>See Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp. v. United States</u>, Order denying Plaintiffs' Motion for Relief from Judgment pursuant to USCIT Rule 60(b) (Sept. 26, 2007) (JA.405-19).

On November 16, 2007, Plaintiffs-Appellants appealed to this Court the CIT's denial of their Rule 60(b) motion. (JA.16). On July 23, 2009, in an unpublished opinion, this Court dismissed Plaintiffs-Appellants' appeal of the Rule 60(b) denial for lack of jurisdiction, finding that the appeal was interlocutory because the CIT had not yet issued a final judgment following the remand in <u>Zhejiang III</u>. <u>Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp. v. United States</u>, Appeal No. 2008-1106, 339 Fed. Appx. 992, 2009 U.S. App. LEXIS 16179 (Fed. Cir. July 23, 2009) (unpublished in Federal Reporter) (JA.420-23).

### 4.    Results of Remand of Critical Circumstances Determination

On June 18, 2013, the CIT sustained a negative critical circumstances determination by Commerce. <u>Zhejiang Native Produce & Animal By-Products Imp. and Exp. Corp. v. United States</u>, Slip Op. 13-76 (June 18, 2013) (reported at

2013 Ct. Intl. Trade LEXIS 75) (JA.22-50) ("Zhejiang V"). At that point, the only issue that had been on appeal to this Court (whether Commerce's affirmative critical circumstances determination was proper) was resolved in accordance with this Court's decision in Zhejiang III and in favor of Plaintiffs-Appellants.

## SUMMARY OF ARGUMENT

The mandate rule precludes further litigation of Commerce's less-than-fair-value determination which was waived when Plaintiffs-Appellants did not appeal that issue from the CIT's decision in Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States, Slip Op. 03-153 (Nov. 21, 2003) (reported at 27 CIT 1827, 2003 Ct. Intl. Trade LEXIS 172) (JA.179-224) ("Zhejiang I"). Under the settled law of this Circuit, an issue that falls within the scope of the judgment appealed from, but is not raised by the appellant in its opening brief on appeal, is necessarily waived. Engel Indus. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999) (citations omitted). There is no dispute between the parties that Plaintiffs-Appellants intentionally failed to appeal to this Court any of its claims regarding the CIT's ruling in Zhejiang I upholding the validity of the less than fair value determination by Commerce in the original investigation. Plaintiffs-Appellants appealed only one issue related to Commerce's affirmative critical circumstances determination, which this Court addressed in Zhejiang III and Judge Eaton correctly applied in Zhejiang Native Produce &

Animal By-Products Imp. and Exp. Corp. v. United States, Slip Op. 13-76 (June 18, 2013) (reported at 2013 Ct. Intl. Trade LEXIS 75) (JA.22-50) ("Zhejiang V").

Based on a straightforward application of the mandate rule therefore, Plaintiffs-Appellants knowingly waived their right to further litigate the issue they now bring before the Court. Plaintiffs-Appellants have not argued any exception to the mandate rule is applicable in this case, and none of the exceptions to the rule apply. As a result, this appeal should be dismissed.

Plaintiffs-Appellants' attempted application of the "law of the case" principle, which is itself another formulation of the mandate rule, is unavailing. In remanding the critical circumstances issue to Commerce after this Court's opinion in Zhejiang III, Judge Eaton properly applied the mandate of this Court in that appeal by instructing Commerce to reach a critical circumstances determination without imputing knowledge of dumping to U.S. importers from the prices of Chinese honey on sales that were made in compliance with price controls in a Suspension Agreement that expired shortly before the initiation of the investigation underlying this appeal. This Court's mandate in Zhejiang III was limited to the only issue appealed by Plaintiffs-Appellants, which was the effect of the Suspension Agreement on one element of Commerce's critical circumstances analysis – the knowledge of dumping test. The Court's opinion and holding did not address any aspect of the potential effect of the Suspension Agreement on the

less-than-fair determination by Commerce, because that question was not briefed by Plaintiffs-Appellants and was therefore not before the Court.

Contrary to Plaintiffs-Appellants' claims, this Court did not make a legal ruling "that, according to 1673c(b), any subject merchandise sold at prices in compliance with the Suspension Agreement, could not, *as a matter of law*, have been dumped." Zhejiang Direct Brief at 25 (citing Zhejiang III, 432 F.3d at 1367). The Court's legal finding in Zhejiang III that the Suspension Agreement "was designed to eliminate dumping," and that "prices in compliance with the Suspension Agreement were required to be at a level that would eliminate sales at less than fair value" according to 19 U.S.C. § 1673c(b), was applied by the Court only as a part of its substantial evidence analysis of whether Commerce could rationally impute knowledge of dumping to an importer based on those prices. Whether knowledge of dumping could reasonably be imputed to importers on sales made in compliance with the terms of a Suspension Agreement made in a previously terminated investigation is quite a different question from whether Commerce was required to find as a matter of law in a subsequent investigation not governed by that Suspension Agreement that such sales were not dumped notwithstanding that Commerce's application of the statutorily-required methodology for calculating dumping margins in investigations of non-market economy countries (19 U.S.C. §§ 1677a and 1677b showed them to be dumped.

This Court did not consider the latter question in <u>Zhejiang III</u>, and consistent with that opinion, the CIT correctly did not include this issue in its remand to Commerce.

As a result, Judge Eaton properly applied the holding of <u>Zhejiang III</u> and instructed Commerce not to impute knowledge of dumping to U.S. importers based on prices that were subject to the Suspension Agreement in its critical circumstances analysis – the only issue that was decided by this Court in <u>Zhejiang III</u>. The negative critical circumstances determination issued by Commerce on remand, and affirmed by the CIT, fully effectuated the mandate of this Court issued in <u>Zhejiang III</u>. Plaintiffs-Appellants, therefore, received precisely the relief they sought when they appealed only the critical circumstances determination and intentionally chose not to appeal to this Court any aspect of Commerce's dumping margin determination. They are entitled to no more.

## ARGUMENT

## I. STANDARD OF REVIEW

"The interpretation by an appellate court of its own mandate is properly considered a question of law, reviewable *de novo*." <u>Laitram Corporation v. NEC Corporation</u>, 115 F.3d 947, 950 (Fed. Cir. 1997) (citations omitted).

## II. PLAINTIFFS-APPELLANTS ARE BARRED BY THE MANDATE RULE FROM FURTHER LITIGATING COMMERCE'S LESS-THAN-FAIR VALUE DETERMINATION

### A. The Mandate Rule Bars Relitigation of Plaintiffs-Appellants' Waived Claims

What is striking about Plaintiffs-Appellants' argument that the "law of the case" doctrine required the CIT to order Commerce to find the investigated sales to have been made at fair value as a matter of law is that it never mentions the fact that they intentionally waived any further appeal of Commerce's less-than fair value determination when they did not raise that issue in Ct. No. 05-1058. See Zhejiang Direct Brief at 17-23. It is settled law in this circuit that a matter decided by the trial court and not raised on appeal is waived by the appellant under the mandate rule and cannot be re-litigated subsequently:

> An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived. Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.

Engel Indus. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999) (citations omitted) ("Engel Industries").

This rule recognizes that in order for the appellate court to ensure that it meets its responsibility to review fully the judgments appealed to it, "the court is entitled to assume that an appellant has raised all issues it deems important against

21

a judgment appealed from." Id. Thus, the mandate rule binds a lower court not only with regard to (1) those issues that the reviewing court has explicitly decided, but also to (2) issues that were within the scope of the lower court's initial judgment and were not appealed to the reviewing court. Id. ("Only the issues actually decided – those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court – are foreclosed from further consideration."). Based on the undisputed facts before this Court, Plaintiffs-Appellants waived their right to further litigate Commerce's less-than-fair-value determination upheld by the CIT in Zhejiang I when they did not appeal that final decision to this Court. The relief they seek should, therefore, be barred under the mandate rule.

There is no dispute that the CIT's dismissal of Plaintiffs-Appellants' claim concerning the correctness of the less-than-fair-value determination was within the scope of the CIT's final judgment in Zhejiang I. Section I of the opinion in Zhejiang I held that "Commerce's calculation of antidumping duty margins is in accordance with law and supported by substantial evidence" in response to Count 1 of Plaintiffs-Appellants' complaint contesting the less than fair value determination. See Zhejiang I, Slip Op. 03-153 at 23 (JA.201). Included in Judge Eaton's discussion of this issue is the finding that the Suspension Agreement did not require a different result. See Zhejiang I, Slip Op. 03-153 at 21 (JA.199).

22

Thus, the impact of the pricing requirements of the Suspension Agreement on Commerce's less-than-fair-value determination was finally decided by the CIT in Zhejiang I in 2003.

Separately, the CIT ruled in Part II of its opinion in Zhejiang I that "Commerce's final affirmative critical circumstances determination is in accordance with law and supported by substantial evidence." Zhejiang I, Slip Op. 03-153 at 39 (JA.217). The CIT also addressed the impact of the Suspension Agreement on the critical circumstances determination in this separate analysis:

> The existence of the Suspension Agreement does not compel a different result. As discussed, supra, the Suspension Agreement was not an agreement to eliminate dumping, but rather an agreement to restrict the volume of imports. As such, Plaintiffs' argument that the existence of the Suspension Agreement detracts from the reasonableness of Commerce's determination that the importers knew or should have known of dumping is misplaced.

Id. at 34 n.34 (JA.212).

The impact of the Suspension Agreement was therefore raised and finally decided by the Court in Zhejiang I as it applied to both the less-than-fair value determination and the critical circumstances determination. Both issues became ripe for appeal once Zhejiang I was final, but Plaintiffs-Appellants appealed only a single issue –whether knowledge of dumping could be imputed to importers in the critical circumstances decision in Appeal No. 05-1058. See Zhejiang III, 432 F.3d

at 1364 ("Zhejiang challenges the imposition of 'critical circumstances' based on this imputation of knowledge of sales at less than fair value.") (JA.334-35). This intentional decision to forego appeal related to the less-than-fair value determination constituted a waiver of any right to further litigate that issue. Wood v. Milyard, 132 S.Ct. 1826, 1832 n.4 (2012) ("A waived claim or defense is one that has been knowingly and intentionally relinquished. . . ."); see also Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004) ("{W}aiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

That Plaintiffs-Appellants "knowingly and intelligently relinquished" the right to further litigation is beyond question, irrespective of the fact that Plaintiffs-Appellants have never explained the reason behind this litigation decision. Nor have Plaintiffs-Appellants made any attempt to argue in this proceeding that they had raised in Appeal No. 05-1058 any issue concerning whether the less-than-fair-value determination was flawed as a result of the operation of the Suspension Agreement. Given that the entire premise of Plaintiffs-Appellants' brief to this Court is that the effect of the Suspension Agreement is necessarily bound to both the calculation of dumping margins and the critical circumstanced decision, the decision not to challenge any aspect of the dumping margin calculation could not have been anything other than deliberate.

Indeed, Plaintiffs-Appellants' election to abandon any challenge of the less-than-fair-value determination was just one in a series of decisions to pursue certain issues – while abandoning others – made over the extended course of this litigation. Plaintiffs-Appellants' Amended Complaint contained 10 counts, only three of which (Counts 1, 2 and 6) were included in their Rule 56.2 motion for judgment on the agency record to the CIT. Amended Complaint at ¶ 10-11 (Count 1) (JA.135); id. at ¶ 12-14 (Count 2) (JA.135); id. at ¶¶ 24-26 (Count 6) (JA.137); Pls.' 56.2 Memorandum in Support at i–ii (listing arguments raised) (JA.143-44). Just as Plaintiffs-Appellants knowingly elected not to pursue seven of 10 issues they raised in their complaint to the CIT, they made the deliberate decision to appeal only a single aspect Commerce's finding of critical circumstances determination – the knowledge of dumping test – while abandoning appeal of issues related to the less-than-fair-value determination.

Thus, Plaintiffs-Appellants "necessarily waived" the issue of whether the less-than-fair-value determination was supported by substantial evidence or in accordance with law. Engel Indus., 166 F.3d at 1383. Because this was "an issue that falls within the scope of the judgment appealed from but was not raised by the appellant in its opening brief on appeal," the correctness of the less-than fair value determination in Zhejiang I was incorporated into this Court's mandate in Zhejiang III and became the "law of the case" for all subsequent proceedings on the same

issue. See Tronzo v. Biomet, Inc., 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("Tronzo") (issue within the scope of the initial judgment of the trial court was foreclosed from further review on remand where it was not challenged on appeal). As a result, this Court should find that Plaintiffs-Appellants are barred under the mandate rule from further litigating the less-than-fair-value determination. Engel Indus., 166 F.3d at 1383.

The facts of this case are by no means exceptional in the applicability of the mandate rule. Appellate courts, including this Court, have under similar circumstances routinely applied the mandate rule to prevent parties from attempting to re-litigate later issues they chose not to pursue when they had the opportunity earlier. See Doe v. United States, 463 F.3d 1314, 1327 (Fed. Cir. 2006) (explaining that plaintiffs waived an issue that was raised only after another issue was reversed on appeal) (citing United States v. Husband, 312 F.3d 247, 250-51 (7th Cir. 2002) and United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (stating that "when an appellate mandate has issued, the mandate rule 'forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court.'")); see also Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (arguments not raised in a party's principle brief are waived for purposes of review).

For all of the foregoing reasons, this Court should dismiss the instant appeal as being barred by a straight-forward application of the mandate rule to the facts presented.

### B. Plaintiffs-Appellants Have Failed to Argue Any Exception to the Mandate Rule

Plaintiffs-Appellants have neither argued that they have not waived further appeal of the dumping margin calculation issues in the context of the mandate rule nor claimed to meet any of the limited exceptions to the mandate rule. They were certainly aware of the relevance of these issues to their appeal because the questions of whether the dumping margin calculation issues were waived or covered by an exception to the mandate rule were affirmatively briefed to this Court by Plaintiffs-Appellants in their appeal of the CIT's denial of their Rule 60(b) motion. See Direct Brief of Plaintiffs-Appellants Zhejiang v. United States, Appeal No. 2008-1106 at 26-30 (JA.793, 824-28). The Court should therefore assume that Plaintiffs-Appellants now concede these issues. See Engel Indus. v. Lockformer Co., 166 F.3d at 1383 ("In other words, the court is entitled to assume that an appellant has raised all issues it deems important against a judgment appealed from."). Because Plaintiffs-Appellants have failed to present any argument in their direct brief that the dumping margin calculation issue was either not waived under the mandate rule or was subject to one of the limited exceptions to that rule, such arguments must also be presumed to be waived and not permitted

in rebuttal to Defendants-Appellees' brief.  Novosteel SA, 284 F.3d at 1273-74 (arguments not raised in a party's principle brief are waived for purposes of review).

To the extent that such arguments are nonetheless raised in rebuttal by the Plaintiffs-Appellants, they are unavailing.  As Plaintiffs-Appellants themselves argue in their brief, courts in this circuit consistently apply the mandate rule

> "unless one of three exceptional circumstances exist: (1) the evidence in a subsequent trial is substantially different; (2) controlling authority has since made a contrary decision of law applicable to the issues; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice." Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (citing Gindes v. United States, 740 F.2d 947, 950 (Fed. Cir. 1984))

See Zhejiang Direct Brief at 30.

This Court has strictly limited the exceptions to the mandate rule to "exceptional" circumstances:

> Accordingly, it may be appropriate in some circumstances for a court to revisit an issue that would otherwise be deemed waived and beyond the scope of an appellate mandate. *Such circumstances must be exceptional*. Otherwise the underlying rationales for the doctrines of the law of the case and the mandate rule would be thwarted.

Tronzo, 236 F.3d at 1349 (emphasis added) (citations omitted).  The deliberate decision to forego an appeal is not an exceptional circumstance; it may more aptly be described as "inexcusable neglect."  See 12 James W. Moore et al., Moore's

28

Federal Practice, ¶ 60.48 [2] at 60-184-85 (Supp. 2007) (footnote omitted) (citing Ackermann v. United States, 340 U.S. 193, 197-202 (1950)) ("Petitioner made considered choice not to appeal . . . and free, calculated, deliberate choices are not to be relieved from."). Plaintiffs-Appellants have provided no reason, much less exceptional circumstances, for their failure to appeal the less-than-fair-value issues decided by the CIT in Zhejiang I.

Moore's also notes that extraordinary circumstances generally exist only where they are beyond the control of the movant:

> In a vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought.

Id. at ¶ 60.48 [3] [b] at 60-187-88 (Supp. 2007). Plaintiffs-Appellants here are entirely at fault for their predicament, having challenged the less-than-fair-value determination before the CIT and having foregone the opportunity to present it to this Court for consideration in Zhejiang III.

Neither the facts nor the controlling law concerning the less than fair value determination changed as a result of this Court's holding in Zhejiang III. To the extent that Plaintiffs-Appellants argue that under the guise of their "law of the case" argument, this Court's statutory construction of 19 U.S.C. § 1673c constituted a change in the controlling legal authority as it would relate to the

29

calculation of the dumping margins, that argument is misplaced. <u>See</u> Zhejiang Direct Brief at 19-24.

As set forth in detail in section III below, the mandate of the Court in <u>Zhejiang III</u> did not extend to issues surrounding the less than fair value determination, which were neither properly before, nor addressed by, the Court in <u>Zhejiang III</u>. As such, that opinion does not provide controlling legal authority for the issue Plaintiffs-Appellants abandoned when they chose not to appeal Count 1 of their complaint. To provide Plaintiffs-Appellants with such relief would undercut the appellees' rights as to finality of decisions, and undermine judicial economy and the discouragement of piecemeal litigation. <u>See</u> <u>Tronzo</u>, 236 F.3d at 1349 n.3.

There is no manifest injustice in requiring Plaintiffs-Appellants to abide by their deliberate litigation choices. This Court has barred relief to parties seeking to further litigate claims that they had intentionally abandoned in the <u>Tronzo</u>, <u>Doe</u> and <u>Engel</u> cases because the movants had the ability to preserve their rights and through their own fault failed to take actions to do so. Plaintiffs-Appellants' circumstances are precisely the type of situation to which the mandate rule was meant to apply. Consequently, this appeal should be dismissed.

## III.   THE CIT PROPERLY INTERPRETED AND APPLIED THE MANDATE OF THIS COURT'S DECISION IN *ZHEJIANG III*

### A.   This Court's Mandate in *Zhejiang III* Does Not Support Relief As to Any Issue Related to Commerce's Less-Than-Fair-Value Determination

The question Plaintiffs-Appellants place before the Court is whether the holding in Zhejiang III includes a finding "that, according to 1673c(b), any subject merchandise sold at prices in compliance with the Suspension Agreement, could not, *as a matter of law*, have been dumped" for purposes of Commerce's less-than-fair-value determination.   Zhejiang Direct Brief at 25 (citing Zhejiang III, 432 F.3d at 1367 (JA.340)).   They argue that the Court's mandate requires Commerce to apply the same legal principle to the less-than-fair-value determination that Plaintiffs-Appellants did not directly appeal.   See Zhejiang Direct Brief at 24.   Plaintiffs-Appellants' arguments, however, are inconsistent with the Court's mandate in Zhejiang III.

This Court has held that the scope of its mandate "is coterminous with the scope of the issues deemed presented to the court on appeal." Engel Indus., 166 F.3d at 1382 (citing Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)). "The scope of the issues presented to this court on appeal must be measured by the scope of the judgment appealed from, not by the arguments advanced by the appellant." Id. at 1382 (citing Sprague, 307 U.S. at 168, and Laitram Corp. v. NEC Corp., 115 F.3d 947, 951 (Fed. Cir. 1997)).   Similarly, this Court has also found

31

that the mandate is limited to "issues actually decided on appeal." Amado v.

Microsoft Corp., 517 F.3d at 1353, 1360 (Fed. Cir. 2008). It also includes "those

issues decided by necessary implication." Laitram Corp., 115 F.3d at 951

(emphasis in original) (citing Conway v. Chemical Leaman Tank Lines, Inc., 644

F.2d 1059, 1062 (5th Cir. 1981)). Consistent with these principles, the Court has

explained:

> Unless remanded by this court, all issues within the scope
> of the appealed judgment are deemed incorporated within
> the mandate and thus are precluded from further
> adjudication.

Engel Indus., 166 F.3d at 1383 (citations omitted).

Reading these principles together, the mandate of Zhejiang III must be

deemed to include (1) issues raised on appeal and decided by this Court, and (2)

the issues decided by the CIT below that were not appealed by Plaintiffs-

Appellants. As discussed in section II above, there is no dispute that Plaintiffs-

Appellants did not appeal in Ct. No. 05-1058 Judge Eaton's decision in Zhejiang I

affirming Commerce less-than-fair-value determination raised in Count 1 of the

Plaintiffs' Amended Complaint and decided in Section 1 of the CIT's decision in

Zhejiang I. See Zhejiang I, Slip Op. 03-153 at 39 (JA.217). Plaintiffs-Appellants

defined the scope of the issues presented to this Court on appeal in their opening

brief in Ct. No. 05-1058 to encompass three issues:

32

> The Department's reliance on a 25 percent bright line test to impute knowledge of dumping is contrary to law.
>
> * * * *
>
> 25 percent margins based on surrogate values do not constitute substantial evidence that importers should have known that Chinese honey was being sold at LTFV prices during the POI.
>
> * * * *
>
> The Department erred by refusing to consider the suspension agreement in its analysis of whether importers "should have known" that they were purchasing Chinese honey at LTFV prices.

Plaintiffs-Appellants' Direct Brief in Ct. No. 05-1058 at 23, 35 and 48 (JA.300, 312 and 325). Based on this formulation of the issues before the Court in Appeal No. 05-1058, that appeal encompassed the question of whether knowledge of dumping could be imputed to the importers based on prices that were subject to the terms of the Suspension Agreement. As Plaintiffs-Appellants did not argue to the Court that the operation of the Suspension Agreement should have directed the outcome of the less-than-fair-value determination, that issue cannot be within the mandate of the Court in Zhejiang III. See Laitram Corp., 115 F.3d at 951-2 (court cited the failure of the parties to rely on or discuss an issue as evidence the issue was not in the mandate of the appeal).

The Court itself framed the issue before it in a manner consistent with the description of the limited issue raised in Plaintiffs-Appellants' brief:

> Zhejiang Native Produce & Animal By-Products Import and Export Corporation and other importers and exporters (collectively "Zhejiang") appeal the decision of the United States Court of International Trade, holding that "critical circumstances," 19 U.S.C § 1673d(a)(3), apply to certain importations of honey from the People's Republic of China.

Zhejiang III, 432 F.3d at 1364 (JA.334-35).  The Court then characterized the specific question before it relating to the critical circumstances decision as follows:

> Zhejiang challenges the imposition of "critical circumstances" based on this imputation of knowledge of sales at less than fair value. Zhejiang states that the purpose and effect of the Suspension Agreement was to set "completely" a non-dumping price for Chinese honey, see 19 U.S.C. § 1673c(b), and that importers should not be charged with imputed knowledge that the China prices would be found to be below fair value when compared with later-determined costs and prices in India.

Zhejiang III, 432 F.3d at 1366-67 (JA.338-39).  Thus, the Court's formulation of the question before it demonstrates that it intended to address Commerce's imputation of knowledge of dumping in the critical circumstances determination, not whether the sales were in fact dumped.

Most importantly, the Court's articulated holding in Zhejiang III gives no indication that the scope of the mandate extended beyond the critical circumstances issue that was the only issue briefed by Plaintiffs-Appellants:

> Zhejiang argues that the "knew or should have known" requirement for critical circumstances was not met, and that substantial evidence does not support the contrary finding based on imputation. We agree. As Zhejiang

states, "it strains credibility to suggest that Commerce could establish minimum prices for honey designed to 'prevent the suppression or undercutting of price levels of the United States honey products' and then determine that U.S. importers purchasing honey in accordance with these pricing guidelines should have known these sales would be found to be at less than fair value." When all factors are considered, there is not substantial evidence to support the finding of critical circumstances.

The contrary ruling of the Court of International Trade is reversed. The case is remanded for appropriate further proceedings.

Zhejiang III, 432 F.3d at 1368 (JA.341). The language of the Court addresses only

the question of imputing knowledge of dumping to importers in the context of the

critical circumstances test, and instructed CIT to apply the Court's mandate only as

to that issue. Had the Court intended a broader holding that required Commerce to

apply its finding as to the requirements of the Suspension Agreement to issues

other than the critical circumstances issue before it, presumably the Court would

have so stated.

It is worth noting that in this Court's own description of the history of this

litigation in its dismissal of Plaintiffs-Appellants' interlocutory appeal of the CIT's

denial of its Rule 60(b) motion does not support Plaintiffs-Appellants' claims for a

broader interpretation of the mandate of Zhejiang III.    While that decision is not

precedential and does not purport to directly interpret the mandate of Zhejiang III,

it is nonetheless instructive as to a plain reading of what was and was not before

the Court in <u>Zhejiang III</u>:

> In 2004, the Court of International Trade sustained the Department of Commerce's findings that honey imported from the People's Republic of China was being sold at less than its fair value and that "critical circumstances" warranted the assessment of enhanced antidumping duties under 19 U.S.C. 1677b(e). <u>Zhejiang Native Produce & Animal By-Prods. Imp. & Exp. Corp. v. United States</u>, 28 Ct. Int'l 1427 (Ct. Int'l Trade 2004) (<u>Zhejiang I</u>) Zhejiang took an appeal to this court, challenging only the trial court's decision with respect to the "critical circumstances" issue. This Court reversed and remanded the case to the trial court on that issue, and the trial Court in turn remanded to the Department of Commerce. <u>Zhejiang Native Produce & Animal By-Prods. Imp. & Exp. Corp. v. United States</u>, 432 F.3d 1363 (Fed Cir. 2005 (<u>Zhejiang II</u>).

<u>Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp. v. United</u>

<u>States</u>, Appeal No. 2008-1106, 339 Fed. Appx. 992, 993, 2009 U.S. App. LEXIS

16179 at *2 (Fed. Cir. July 23, 2009) (unpublished in Federal Reporter) (JA.422).

Nothing in this language would lead one to believe that any aspect of the less-than-

fair value determination remained at issue after <u>Zhejiang III</u>.

There is no evidence on the face of the opinion in <u>Zhejiang III</u> that the Court

ever reached the question that Plaintiffs-Appellants claim – that "any subject

merchandise sold at prices in compliance with the Suspension Agreement, could

not, as a matter of law, have been dumped" for purposes of the less-than-fair-value

determination. Zhejiang Direct Brief at 25-26 (citing <u>Zhejiang III</u> at 1367). The

Court did not consider this latter question in Zhejiang III, precisely because Plaintiffs-Appellants purposefully did not appeal or brief the issue to the Court. As this Court explained under similar circumstances in the Laitram Corp. case:

> It is incorrect to conclude that we decided issues . . . neither presented to us nor discussed in our opinion, nor necessary to the disposition of the appeal. The scope of our review, and our power to review, was limited to the sole order that was appealed. That order was limited to infringement.

Laitram Corp., 115 F.3d at 952. Because the effect of the Suspension Agreement on the less-than-fair-value determination was neither presented to nor discussed by the Court in Zhejiang III, the mandate of Zhejiang III was necessarily "limited to the sole order that was appealed" – the imputation of knowledge in the critical circumstances determination. Indeed, the CIT was precluded from granting relief beyond the scope of that mandate. Laitram Corp., 115 F.3d at 951 ("Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate.") (citations omitted).

The CIT correctly remanded the determination to Commerce "for further consideration of its critical circumstances findings, provided that in no event shall Commerce impute to plaintiffs any knowledge prohibited by the CAFC's decision." Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp. v. United States, Slip Op. 06-85 at 2 (June 6, 2006) (reported at 30 CIT 725) (JA.361) ("Zhejiang IV"). The CIT therefore gave full effect to the mandate of

37

Zhejiang III, which eventually led to Plaintiffs-Appellants receiving the full measure of relief that they sought in that appeal – a negative critical circumstances determination.  Under the mandate of Zhejiang III, they are entitled to no more.

### B.   Commerce's Less-than-Fair-Value Determination Was Not "By Necessary Implication" Included In the Mandate of *Zhejiang III*

Plaintiffs-Appellants claim throughout their brief that because the Court made a "legal finding" that the Suspension Agreement "'was designed to eliminate dumping,'" and that "'prices in compliance with the Suspension Agreement were required to be at a level that would eliminate sales at less than fair value.'"  See, e.g., Zhejiang Direct Brief at 3 (quoting Zhejiang III, 432 F.3d at 1366–67).  The upshot of their argument appears to be that the necessary implication of the Court's decision was that Commerce should have been issued instructions to find that the Chinese honey was not dumped.  Zhejiang Direct Brief at 25 (citing Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 950 (3d Cir. 1985)).  This argument is misplaced for several reasons.

### 1.   The Construction of a Statute As It Applies to One Issue Does Not By Itself Create Law of the Case to Other Issues

The implication of Plaintiffs-Appellants' argument is that any time the Court interprets a statute in the course of its review of an issue, any contrary interpretation of the same statute by the Court below must necessarily be corrected regardless of whether the issue to which the law is to be applied is before the

Court. <u>See</u> Zhejiang Direct Brief at 25. To accept that proposition would defeat the purpose of the mandate rule, which is to "promote the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988) (quoting 1B J. Moore, J. Lucas & T. Currier, <u>Moore's Federal Practice</u>, PO.404[1], p.118 (1984)).

To the contrary, courts decide only the issues before them. The Supreme Court's explanation of the "law of the case" doctrine in <u>Christianson</u> states that "'when a court decides upon a rule of law, that decision should continue to govern *the same issues* in subsequent stages in the same litigation.'" <u>Christianson</u>, 486 U.S. at 815-16 (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983) (dictum))(emphasis added in brief). By this definition, the portion of the Court's opinion in <u>Zhejiang III</u> interpreting 19 U.S.C. § 1673c(b) was only required to be applied in subsequent proceedings to the "same issue" that was before the Court – the imputation of knowledge of dumping in a critical circumstances determination. That is precisely what the CIT did on remand after <u>Zhejiang III</u>.

> **2.  The Court Did Not Rule by Necessary Implication That the Suspension Agreement Compelled Commerce to Reach a Negative Less-than-Fair-Value Determination**

Contrary to the result Plaintiffs-Appellants seek in this appeal, this Court did not directly or by necessary implication rule in <u>Zhejiang III</u> that as a "matter of

law" sales in compliance with the pricing restrictions of the expired Suspension
Agreement were required to be found to be fair value sales in an entirely different
investigation.  The Court never addressed (because Plaintiffs-Appellants did not
raise) the CIT's primary reason for determining why the terms of the Suspension
Agreement did not preclude a finding of dumping, namely that,

> nothing in the statutes or regulations that guide
> Commerce's antidumping determination in the NME
> context requires (*or for that matter permits*) Commerce
> to consider the terms of a suspension agreement.  See 19
> U.S.C. §§ 1677b(c) [statutory criteria for normal value in
> the NME context], 1677a(a) [statutory criteria for export
> price]; 19 C.F.R. § 351.408(a) [Commerce regulations'
> criteria for normal value in the NME context].

Id. at 19 (JA.197) (emphasis added).  The CIT explained in detail in Zhejiang I that
in making its dumping determinations, Commerce had closely followed the
statutory criteria for establishing the two essential components of a dumping
calculation – U.S. price and normal value – for investigations involving imports
from a non-market economy ("NME") country such as China.  Zhejiang I, Slip Op.
03-153 at 8-13, 18-19, 23 (JA.186-91, 197-98, 201).  In other words, even
assuming that Suspension Agreement was intended to eliminate dumping, nothing
in the controlling sections of the antidumping statute authorized Commerce to
consider that agreement in performing the complex dumping calculations specified
by the law.  The CIT concluded:

> As Commerce has complied with the statutes guiding its determinations with respect to the calculation of normal value in the NME context, and the calculation of export price, and as there is no dispute as to the mathematical accuracy of the estimated margins as reported in the Amended Final Determination, the court finds that Commerce's calculation of antidumping duty margins is in accordance with law and supported by substantial evidence.

Id. at 23 (JA.201) (citations omitted). The language of the opinion in Zhejiang III does not address or negate the primary reasoning relied on by the CIT in upholding the less-than-fair-value determination, either directly or by implication. Id. at 19-23 (JA.197-201).

Nor is there any logical link between the Court's critical circumstances holding and the dumping margin calculation. That Commerce may not impute to importers knowledge-of-dumping for U.S. sales that were compliant with the Suspension Agreement does not mean that such compliance prevents Commerce from determining whether dumping in fact occurred under the precise methodology strictly dictated by the statute at 19 U.S.C. §§ 1677b(c) and 1677a(a). Moreover, it is unclear why the terms of a Suspension Agreement from another investigation which had expired would legally compel Commerce's methodology in a subsequent investigation. While the terms of the Suspension Agreement were found by this Court to be relevant to assessing what importers would have been expected to believe with respect to the existence of dumping, it is an entirely

41

different thing to say that the Suspension Agreement blocked Commerce's authority to determine if the sales were, in fact, dumped by applying the methodology required by the statute. Only the former question was the focus of the Court Zhejiang III, and nothing in the opinion implicates Commerce's less-than-fair-value determination.

### 3. The Court's Interpretation of Section 1673b(c) Is Not Part of the Holding of *Zhejiang III*

The Court's interpretation of 19 U.S.C. § 1673c(b) was also not a part of the direct holding of Zhejiang III, and should not be applied by necessary implication beyond the specific facts of that case. The Court's construction of requirements of 19 U.S.C. § 1673c(b) does not appear as a part of the language of the holding or in the instructions to the CIT on remand. Zhejiang III, 432 F.3d at 1367-68 (JA.338-41). Ultimately, this Court held that the U.S. importers purchasing honey with pricing guidelines determined by a Suspension Agreement "'designed to prevent the suppression or undercutting of price levels of the United States honey products'" did not provide substantial evidence to support the finding of critical circumstances. Zhejiang III, 432 F.3d at 1368 (JA.341).

Contrary to Plaintiffs-Appellant's argument, application of the "spirit of the opinion" does not sweep into the mandate everything in the opinion. Zhejiang Direct Brief at 17-18. The opinion of the court provides context for determining

42

the mandate in light of the facts before it, and not everything said is swept into the mandate:

> Opinions, unlike statutes, are not usually written with the knowledge or expectation that each and every word may be the subject of searching analysis. Acknowledging this fact, this court held long ago that the "language of the court must be read in light of the facts before it." <u>Julian Petroleum Corp. v. Courtney Petroleum Co.</u>, 22 F.2d 360, 362 (9th Cir, 1927); <u>see also</u> <u>Marshall v. Andrew F. Mahoney Co.</u>, 56 F.2d 74, 78 (9th Cir. 1932) ("[T]he language of all cases must be taken and understood in light of the facts of the case in which the language was employed.").

<u>United States v. Muckleshoot Indian Tribe</u>, 235 F.3d 429, 433 (9th Cir. 2000). Reading the language of <u>Zhejiang III</u> in light of the facts and issues that were actually before the Court does not demonstrate that the Suspension Agreement precluded a finding of actual dumping based on substantial evidence; it only precluded imputing knowledge to importers that such actual dumping exists. Accordingly, the language relied on by the Plaintiffs-Appellants does not represent the law of the case to be applied by necessary implication to the less-than-fair value determination.

**C.** **The "Law of the Case Doctrine" and the Mandate Rule Are Different Aspects of the Same Policy and Must be Applied Consistently**

Plaintiffs-Appellants understandably seek to ignore their deliberate waiver of any appeal of the dumping margin calculation issues finally decided by the CIT

in Zhejiang I. They asked the Court instead to interpret its mandate in Zhejiang III to include a holding "that, according to 1673c(b), any subject merchandise sold at prices in compliance with the Suspension Agreement, could not, *as a matter of law*, have been dumped." Zhejiang Direct Brief at 25 (citing Zhejiang III, 432 F.3d at 1367) (JA.340)). Plaintiffs-Appellants' application of the "law of the case doctrine" is contrary to this Court's application of the mandate rule, which is another formulation of the same legal principle.

"'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983) (dictum)). The rule "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" Id. at 816 (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p.118 (1984)). The "mandate rule" is itself an aspect of the law of the case doctrine and it provides that "'issues actually decided on appeal -- those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court -- are foreclosed from further consideration.'" Clark v. United States, 656 F.3d 1317, 1320-21 (Fed. Cir. 2011) (quoting Amado v. Microsoft Corp., 517 F.3d 1353, 1360 (Fed. Cir. 2008)).

Because the law of the case doctrine and the mandate rule are just different formulations of the same policy, their application to this case should reach the same result. Plaintiffs-Appellants improperly seek to have this Court answer a question they intentionally chose not to ask in Appeal No. 05-1085, by extending the applicability of a subsidiary ruling regarding the question they actually did ask in that case. See Tronzo, 236 F.3d at 1349. Plaintiffs-Appellants essentially ask this Court to speculate as to what it might have decided had Plaintiffs-Appellants timely appealed the issue on which they now seek relief. The Court is not permitted to engage in such speculation, and it should not permit Plaintiffs-Appellants to engage in an end-run around the a straight-forward application of the mandate rule a strained application of the law of the case doctrine.

### D.    The CIT Did Not Fail to Implement the Mandate of *Zhejiang III*

A significant portion of Plaintiffs-Appellants' brief is spent attempting to demonstrate that the Court of International Trade continues to disagree with, and refuses to apply, this Court's construction of the suspension agreement statute in Zhejiang III that the imports made at prices in compliance with the Suspension Agreement were required to be at non-dumped prices. See Zhejiang Direct Brief at 26-29. This claim is in error.

There is no dispute that once the case was returned to him, Judge Eaton faithfully applied the legal holding of Zhejiang III to the only issue still before him

at that time and the only issue actually decided by the Court – the issue of whether Commerce could impute knowledge of dumping to importers purchasing honey sold in compliance with the terms of the suspension agreement. The CIT's stated disagreement with this Court's reading of section 1673c(b) in its denial of Plaintiffs-Appellants' Rule 60(b) motion does not represent an attempt to "under-rule" the Court. Zhejiang Direct Brief at 27-28.

While the CIT expressed disagreement with this Court's reading of the statute in its ruling on the Rule 60(b) motion, it did so in discussing an issue not before the Court in Zhejiang III. The trial court held, however, that Plaintiffs-Appellants' claim was waived and precluded from further litigation under the mandate rule. See Zhejiang Native Produce and Animal By-Products Imp. & Exp. Corp. v. United States, Order denying Plaintiffs' Motion for Relief from Judgment pursuant to USCIT Rule 60(b) (Sept. 26, 2007) (JA.405-19).

There was nothing inappropriate in that decision. "A district judge who thinks new evidence or a better argument 'refutes' one of our decisions should report his conclusions while applying the existing law of the circuit." Donahoe v. Consolidated Operating & Prod. Corp., 30 F.3d 907, 910 (7th Cir. 1994) (citations omitted). The CIT gave full effect to the mandate of Zhejiang III as it was required to do, and any continued disagreement with the reasoning of that decision has had no impact on the outcome of the case.

## **CONCLUSION AND RELIEF SOUGHT**

The appeals surrounding this antidumping duty investigation have been ongoing for over a dozen years, and Plaintiffs-Appellants have had more than adequate opportunity to argue their case. Plaintiffs-Appellants received exactly the result they asked for from this Court in <u>Zhejiang III</u>, as well as from the CIT and Commerce on subsequent remand, when they chose to appeal only the critical circumstance determination in Count 2 of their complaint. In making this choice, they waived any right to all other relief, and no further relief is deserving under a reasonable application of the mandate rule. As a result, this Court should dismiss Zhejiang's appeal and uphold the Court of International Trade's decision without further proceedings.

Respectfully submitted,

MICHAEL J. COURSEY
R. ALAN LUBERDA
KELLEY DRYE & WARREN, LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400

Counsel to Defendants-Appellees Sioux Honey Association and American Honey Producers Association

March 18, 2014

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Undersigned counsel for Defendants-Appellees, Sioux Honey Association and American Honey Producers Association, certifies that this brief complies with the typeface and volume limitation of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(7)(B) **by using a proportionately spaced 14-point typeface, and further certifies that this brief contains 10,707 words,** including footnotes in accordance with Federal Rules of Appellate Procedure 32(a)(7)(B)(iii). The word-count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2010.

March 18, 2014

R. Alan Luberda
Counsel to Defendants-Appellees

# CERTIFICATE OF SERVICE

## Zhejiang Native Produce & Animal By-Products Import & Exporp Corp. v. United States
### CAFC Court No. 2013-1574

I hereby certify that on **March 18, 2014,** Defendants-Appellees Sioux Honey Association and American Honey Producers Associations' Brief was served upon all parties by operation of the Court's electronic filing system.

R. Alan Luberda
aluberda@kelleydrye.com
KELLEY DRYE & WARREN LLP.
3050 K Street NW, Suite 400
Washington DC, 20007
(202) 342-8400